UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| A.S., et al., | ) | CASE NO. 1:23-cv-01763 |
| | ) | |
| Plaintiffs, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| ELYRIA CITY SCHOOLS, et al., | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |

Plaintiffs in this case are A.S., a former Elyria High School student, and Misty Jean Estep, her mother. Plaintiffs sue several entities and individuals connected to A.S.'s high school in relation to school discipline that A.S. received. Specifically, Plaintiffs sue the following Defendants: Elyria City Schools; the Elyria Board of Education; Board of Education members Greg Elek, Michael Gebhardt, Annie Carstarphen, Elaine Seguin, and Len Howser; Elyria High School administrators Brett Heighberger and Amy Bodnar; Elyria City Schools superintendent Ann Schloss; and the Ohio Department of Education.

All Defendants except the Ohio Department of Education, which has not yet appeared in this matter, moved to dismiss Plaintiffs' complaint. (Doc. No. 6.) Plaintiffs opposed the motion. (Doc. No. 10.) And all moving Defendants replied. (Doc. No. 12.) For the following reasons, the Court GRANTS the motion to dismiss and DISMISSES all claims.

I. **Background**

　A. **Factual Allegations**

On or about October 12, 2022, A.S. asked some of her African American classmates to make a TikTok video with her. (Doc. No. 1 at ¶ 22.) A.S. recorded herself and her classmates dancing, set the recording to a random song, and posted the resulting video on TikTok. (*Id.*)

1

Allegedly, the music that A.S. used in her TikTok video contained racially offensive language and racial slurs. (*Id.* at ¶¶ 23, 33.) Some of A.S.'s classmates reported the video to school officials, and those officials suspended A.S. pending further disciplinary proceedings. (*Id.* at ¶¶ 11, 23.)

School officials immediately sent a letter to Estep, indicating that they intended to suspend A.S. for nine days. (*Id.* at ¶ 12.) Five days later, on October 17, 2022, school officials sent two follow-up letters to Estep. (*Id.* at ¶¶ 13–14.) These two follow-up letters indicated that school officials now intended to suspend A.S. for ten days with a recommendation for expulsion, and the letters stated that school officials would hold a disciplinary hearing on October 24, 2022. (*Id.* at ¶¶ 13–15.) Estep did not receive the school's three letters until October 21, 2022.[1] (*Id.* at ¶¶ 15.)

Plaintiffs quickly secured counsel, who gave notice on October 23, 2022 that Plaintiffs intended to contest A.S.'s discipline. (*Id.* at ¶ 16.) Plaintiffs' counsel also asked to postpone the October 24 hearing, but school officials denied that request. (*Id.*) On October 24, 2022, Plaintiffs, their counsel, and school officials participated in a disciplinary hearing where they attempted to reach a settlement. (*Id.* at ¶ 17.) The settlement discussions were unsuccessful, so school officials scheduled a full hearing before the Elyria Board of Education for February 1, 2023. (*Id.* at ¶¶ 18, 21.)

Ahead of the full hearing, A.S. withdrew from Elyria High School to enroll in online classes for the remainder of the school year. (*Id.* at ¶ 19.) Plaintiffs allege that A.S. did so in part due to "the harassment she received from students at Elyria High School." (*Id.* at ¶ 20.)

---

[1] The complaint appears to contain some typographical errors as to dates. The Court uses the dates that Plaintiffs seem to have intended based on the context of the factual allegations.

Nonetheless, the parties still proceeded with the full disciplinary hearing on February 1, 2023. (*Id.* at ¶ 21.) At the full hearing, school officials testified that students had reported A.S.'s TikTok video and that the video made those students feel uncomfortable. (*Id.* at ¶¶ 23–24, 26.) However, school officials did not present any testimony from student witnesses. (*Id.* at ¶ 27.) Nor did school officials produce or play the TikTok video at issue.[2] (*Id.* at ¶¶ 25, 36.) Instead, school officials played an audio clip that they received from a student. (*Id.* at ¶¶ 33–34.) The audio clip contained a song with racially offensive language, and school officials claimed that this audio clip was from A.S.'s video. (*Id.*) Plaintiffs deny that the audio clip came from A.S.'s TikTok video. (*Id.* at ¶¶ 35, 41.)

At the conclusion of the hearing, the Elyria Board of Education voted to uphold A.S.'s "suspension and assumed expulsion" by a 3-2 vote. (*Id.* at ¶ 44.) Subsequently, A.S. moved to Texas for her final year of high school. (*Id.* at ¶ 45.)

**B. Procedural History**

Plaintiffs filed suit against Defendants on September 11, 2023. (Doc. No. 1.) In their lawsuit, Plaintiffs make six claims against Defendants: (1) negligence; (2) gross negligence; (3) defamation; (4) violation of procedural due process under 42 U.S.C. § 1983; (5) intentional infliction of emotional distress; and (6) negligent infliction of emotional distress. (*Id.*) All Defendants, except the Ohio Department of Education, have moved to dismiss Plaintiffs' entire lawsuit under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

---

[2] The reason the TikTok video was apparently not available is because A.S. deleted the video after a classmate told her that someone did not like the video. (Doc. No. 1 at ¶ 40.)

3

## II. **Legal Standard**

### A. Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion tests whether the complaint meets this standard. To survive a Rule 12(b)(6) motion for failure to state a claim, the complaint must make out a plausible legal claim, meaning that the complaint's factual allegations must be sufficient for a court "to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility does not require any specific probability of success, but it does demand "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Courts deciding a Rule 12(b)(6) motion construe the complaint in the light most favorable to plaintiff, accept all factual allegations as true, and draw reasonable inferences in plaintiff's favor. *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 534 (6th Cir. 2017) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)). However, courts do not accept legal conclusions or other conclusory allegations as true, nor do they draw unwarranted inferences. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010)).

### B. Rule 12(b)(1)

Parties can challenge a court's subject matter jurisdiction through either facial attacks or factual attacks. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Where, as here, a defendant argues that the complaint does not sufficiently establish Article III standing, the defendant makes a facial attack. *See id.* In considering facial attacks, courts apply a standard like the one for Rule 12(b)(6) motions: they assume all factual allegations in the complaint are true while disregarding legal conclusions and other conclusory

4

assertions. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016). If a court finds that the complaint establishes standing under those circumstances, the complaint survives. *Id.*

### III. Analysis

#### A. Estep's Standing

The Court begins with the threshold issue of standing. Among other elements, Article III standing requires a plaintiff to demonstrate "injury in fact." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Defendants argue that Estep does not have standing to make a Section 1983 claim because Estep was not injured by the constitutional violations that her daughter A.S. allegedly suffered. (Doc. No. 6 at 15–16.) The Court agrees. "In the Sixth Circuit, a section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort." *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000) (collecting cases). "[O]nly the purported victim . . . may prosecute a section 1983 claim." *Id.* Because the complaint does not allege that Defendants violated Estep's constitutional rights, Estep lacks any cognizable constitutional injury and lacks standing to assert her Section 1983 claims.

Further, the Court finds that Estep lacks standing to assert her state law claims in this case. Although Defendants did not challenge Estep's Article III standing to raise her state law claims, the Court may *sua sponte* consider standing. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007). As with Estep's Section 1983 claim, the Court concludes that Estep has not pleaded any injury from her state law claims. According to the complaint, Estep's only involvement in the relevant events appears to be receiving notices from Elyria High School about A.S.'s discipline. (*Id.* at ¶¶ 12–15.) Receiving required disciplinary notices is not an injury.

5

Accordingly, the Court DISMISSES all of Estep's claims for lack of standing. This jurisdictional dismissal is without prejudice, but it is also without leave to amend. That is because, for the reasons below, Estep would fail to state a claim even if she had pleaded standing, and amendment could not cure that failure.

### B. Section 1983 – Qualified Immunity

Having resolved Estep's standing, the Court turns to the merits of A.S.'s claims, beginning with A.S.'s Section 1983 claim for denial of procedural due process. The Supreme Court has held that procedural due process protects public school students facing school suspension or greater levels of discipline. *Goss v. Lopez*, 419 U.S. 565 (1975). A.S. alleges that Defendants violated her procedural due process rights in two ways. First, A.S. claims that Defendants wrongfully prevented her from cross-examining student witnesses during her expulsion hearing. Second, A.S. claims that Defendants violated her rights by introducing hearsay evidence at her expulsion hearing.

To succeed on either of those theories as to the Individual Defendants (the Elyria Board of Education members, the Elyria High School administrators, and the Elyria superintendent), A.S. must overcome the Individual Defendants' qualified immunity defense. That is, A.S. must allege facts showing (1) the Individual Defendants violated one of her constitutional rights, and (2) that constitutional right was clearly established. *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011) (citing *Pearson v. Callahan*, 129 S. Ct. 808, 816 (2009)). The Court addresses qualified immunity under each of A.S.'s theories in turn.

#### 1. Lack of Cross-Examination

Whether a public high school student has a right to cross-examine student witnesses at an expulsion hearing is a settled question. In *Newsome v. Batavia Local School District*, 842 F.2d 920 (6th Cir. 1988), the Sixth Circuit answered that question in the negative. There, the Sixth

6

Circuit held that procedural due process does not entitle a public high school student challenging his expulsion to cross-examine student witnesses. *Id.* at 924–25. *Newsome* is directly on point in this case and is therefore fatal to A.S.'s cross-examination claim. Denying cross-examination did not violate A.S.'s rights, so A.S. falters at the first prong of qualified immunity.

      A.S. resists this conclusion by citing to more recent cases where the Sixth Circuit has required cross-examination at disciplinary hearings in the educational context. (Doc. No. 10 at 12–14.) Namely, A.S. cites to *Doe v. University of Cincinnati*, 872 F.3d 393 (6th Cir. 2017), and *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018) (collectively, the "*Doe* cases"), where the Sixth Circuit held that public universities needed to give students accused of sexual assault the opportunity to cross-examine their accusers and other adverse witnesses in some cases. But there is one important distinction between the *Doe* cases and A.S.'s case: the *Doe* cases addressed procedural due process at the college level while A.S.'s claim implicates procedural due process at the high school level. This is a meaningful contrast. Courts determining the amount of procedural protection that due process requires must weigh, among other factors, "the government interest involved, including the burden that additional procedures would entail." *Doe v. Michigan State Univ.*, 989 F.3d 418, 428 (6th Cir. 2021) (quoting *Doe v. Cummins*, 662 F. App'x 437, 446 (6th Cir. 2016)). The college educational environment is unlike the high school educational environment, meaning that the government interests are different in each context. Since A.S.'s case arises in the high school educational context, *Newsome* controls over the *Doe* cases.

      In an effort to distinguish her case from *Newsome*, A.S. points to the *Doe* cases' reasoning that cross-examination is vital when the ultimate disciplinary decision turns on an accusing witness's credibility. (Doc. No. 10 at 12–14.) According to A.S., her case required

7

cross-examination because school officials did not have access to the TikTok video in question and A.S. denied that the TikTok video contained racially insensitive language. (*Id.*) A.S. claims that in this situation, her discipline depended solely on the credibility of the student witnesses who reported her TikTok video. (*Id.*)

A.S. is correct to observe that the presence of credibility issues was important to the cross-examination requirement in the *Doe* cases. *Baum*, 903 F.3d at 581; *Univ. of Cincinnati*, 872 F.3d at 401–04. However, the presence of credibility issues does not explain why *Newsome* differed from the *Doe* cases and does not distinguish A.S.'s case from *Newsome*. In *Newsome*, school officials decided to expel the high school plaintiff for selling marijuana on school property "based solely on the statements of [] two student informants." *Newsome*, 842 F.2d at 922. The expulsion in *Newsome* therefore hinged on the student informants' credibility—there was no other evidence supporting expulsion.[3] Nonetheless, the *Newsome* court held that school officials did not have to allow cross-examination of the student informants. *Id.* at 924–25. So even accepting A.S.'s argument that her case involved credibility determinations, *Newsome* still controls.

The Court recognizes that there is some tension between *Newsome* and the *Doe* cases. But the Court does not have the power to resolve that tension. "If a precedent of [the Court of Appeals] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [district courts] should follow the case which directly controls, leaving to [the Court of Appeals] the prerogative of overruling its own decisions." *Rodriguez de Quijas v.*

---

[3] Although it was later revealed that school officials claimed a third party told them the plaintiff had admitted to involvement in the alleged marijuana sale, that third party denied doing so during the district court proceedings in *Newsome*. 842 F.2d at 922.

8

*Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989). *Newsome* remains good law that directly applies in this case, thereby foreclosing A.S.'s cross-examination claim.

In any event, A.S.'s claim falls at the second prong of qualified immunity, too. To show that a constitutional right is clearly established for purposes of overcoming qualified immunity, a plaintiff must show that "existing precedent has 'placed the . . . constitutional question beyond debate.'" *Schulkers v. Kammer*, 955 F.3d 520, 532 (6th Cir. 2020) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). As the discussion above demonstrates, the tension in the Sixth Circuit's case law makes the requirement of cross-examination in the school disciplinary context debatable at best.

Binding precedent establishes that the Individual Defendants are entitled to qualified immunity on A.S.'s cross-examination claim. Because A.S. cannot plead around that precedent by alleging additional facts, the Court DISMISSES with prejudice the cross-examination claims against Individual Defendants.

### 2. Use of Hearsay

"It is clear that admission of hearsay evidence [at a school disciplinary proceeding] is not a denial of procedural due process." *Univ. of Cincinnati*, 872 F.3d at 405 (alteration in original) (quoting *Crook v. Baker*, 813 F.2d 88, 99 (6th Cir. 1987)); *see also Newsome*, 842 F.2d at 926 (agreeing with the Fifth Circuit that hearsay may be used in school disciplinary hearings). So, the Individual Defendants are entitled to qualified immunity on the ground that use of hearsay did not violate A.S.'s rights. Since A.S. cannot plead around this precedent, the Court DISMISSES with prejudice the hearsay claims against Individual Defendants.

### C. Section 1983 – *Monell*

A.S. also asserts her procedural due process claim against the Elyria Board of Education. But unlike the Individual Defendants, the Board is a municipal entity not protected by qualified

9

immunity. *Moldowan v. City of Warren*, 578 F.3d 351, 392 (6th Cir. 2009) (citation omitted). Instead, Section 1983 claims against municipal entities like the Board are limited by *Monell*, which requires plaintiffs to show that the municipal entity (1) caused a constitutional violation (2) pursuant to an official policy, whether formally adopted or based in established usage or custom. *Adkins v. Bd. of Educ. of Magoffin Cnty.*, 982 F.2d 952, 957 (6th Cir. 1993) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)).

As the Court explained above, A.S. has not alleged any procedural due process violation. A.S.'s complaint is also silent as to whether school officials carried out her disciplinary hearing in accordance with official Board policy. As a result, A.S. has failed to state a *Monell* claim against the Board. Since amendment will not be able to cure the lack of due process violation, the Court DISMISSES with prejudice the Section 1983 claims against the Elyria Board of Education.

### D. State Law Claims

A.S.'s state law claims are each barred against the Elyria Board of Education by immunity under Ohio Revised Code § 2744.02. A municipal entity like the Elyria Board of Education is immune from liability for alleged torts committed "in connection with a governmental or proprietary function" as long as one of five exceptions does not apply. *Hortman v. Miamisburg*, 852 N.E.2d 716, 718 (Ohio 2006) (quoting Ohio Rev. Code § 2744.02(A)(1)). School discipline is a governmental function. Ohio Rev. Code § 2744.01(C)(2)(c) ("A 'governmental function' includes . . . The provision of a system of public education."). And none of the five exceptions—negligent motor vehicle accident, negligent

10

performance of proprietary functions,[4] negligent failure to maintain public roads, negligent failure to maintain certain government buildings, and specific liability imposed by the Ohio Revised Code—apply here. Therefore, the Board is immune.

The Individual Defendants are also entitled to immunity from A.S.'s state law claims. Under Ohio Revised Code § 2744.03(A)(6), municipal employees are immune from suit unless one of three exceptions applies: (a) their acts were "manifestly outside the scope of [their] employment or official responsibilities"; (b) they acted "with malicious purpose, in bad faith, or in a wanton and reckless manner"; or (c) the Ohio Revised Code expressly imposes liability. Exception (a) to immunity does not apply because school discipline is clearly within the Individual Defendants' responsibilities as school officials. And there is no indication that any section of the Ohio Revised Code triggers exception (c). That leaves only exception (b). This exception "overlaps" with the federal qualified immunity analysis. *Heeter v. Bowers*, 99 F.4th 900, 922 (6th Cir. 2024) (citation omitted). Because the Court found that the Individual Defendants are entitled to qualified immunity, the Individual Defendants also receive § 2744.03 immunity. *See id.* (adopting the qualified immunity analysis when deciding § 2744.03 immunity).

The Court sees no way for A.S. to plead around these immunities, so it DISMISSES with prejudice A.S.'s state law claims against the Elyria Board of Education and Individual Defendants.

---

[4] The immunity statute expressly defines "proprietary functions" to be mutually exclusive from "governmental functions." Ohio Rev. Code § 2744.01(G)(1). Because a governmental function is at issue here, the proprietary function exception cannot apply.

### E. Remaining Defendants

Up to this point, the Court has not addressed A.S.'s claims against Elyria City Schools and the Ohio Department of Education. That is because these two remaining defendants must be dismissed for other reasons.

Under Ohio law, school districts are not suable entities; it is the board of education that can be sued. Ohio Rev. Code § 3313.17; *Est. of Olsen v. Fairfield City Sch. Dist. Bd. of Educ.*, 341 F. Supp. 3d 793, 799 (S.D. Ohio 2018) (collecting cases). Thus, Elyria City Schools is not a proper party.

The Ohio Department of Education, on the other hand, is protected by sovereign immunity. While the Department of Education has not yet appeared and no party raises sovereign immunity, courts have the power to raise the issue *sua sponte*. *Cady v. Arenac Cnty.*, 574 F.3d 334, 344–45 (6th Cir. 2009). Sovereign immunity protects state departments, such as the Ohio Department of Education, from federal lawsuits seeking money damages. *Boler v. Earley*, 865 F.3d 391, 409–10 (6th Cir. 2017). "There are three exceptions to sovereign immunity: (1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex Parte Young* . . . applies." *Id.* (citations omitted). None of those exceptions apply here.

First, there is no indication that Ohio has waived sovereign immunity in this case. Second, Section 1983 does not abrogate sovereign immunity, *id.* (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)), nor does any other Congressional act do so. And third, because A.S. seeks only monetary compensation (Doc. No. 1, Prayer for Relief), the *Ex Parte Young* exception—which permits certain federal lawsuits seeking injunctive relief—does not apply. *See Mich. Bell Tel. Co. v. Climax Tel. Co.*, 202 F.3d 862, 867 (6th Cir. 2000) (citing *Ex*

12

*Parte Young*, 209 U.S. 123, 159–60 (1908)). As such, the Ohio Department of Education is not amenable to suit in this case.

Accordingly, the Court DISMISSES Elyria City Schools and the Ohio Department of Education with prejudice.

### IV. Conclusion

In sum, the Court GRANTS Defendants' motion to dismiss, DISMISSES Estep's claims without prejudice but without leave to amend, and DISMISSES A.S.'s claims with prejudice. The Clerk shall close this matter.

**IT IS SO ORDERED.**

**Date:** August 7, 2024

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE